UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v.                                                        CASE NO.   3:14-cr-73-J-MJG-JRK

MITCHELL HOLLAND
WARREN ROSENFELD
RONDELL SCOTT HEDRICK
_____/

## UNITED STATES' TRIAL MEMORANDUM REGARDING ADMISSIBILITY OF INEXTRICABLY INTERTWINED AND RULE 404(B) EVIDENCE

The United States of America, via the undersigned Assistant United States Attorney, files this Trial Memorandum concerning the admissibility evidence that is inextricably intertwined to the charged crimes in the Indictment and Rule 404(b) evidence as to defendants Warren Rosenfeld, Mitchell Holland, and Rondell Scott Hedrick.   The seminal focus of the trial will be the *mens rea* aspects of the alleged scheme and artifice to defraud.   In such situations, the law favors admission of such evidence.   The inextricably intertwined doctrine and Rule 404(b) are rules of inclusion.

I.      **BACKGROUND**

   **A. Mitchell Holland and Warren Rosenfeld - Association**

     **1.  2008 - 2010 Transactions Involving Rosenfeld and Holland**

Warren Rosenfeld and Mitchell Holland worked together to defraud investors for more than two years.   Rosenfeld responded to a target letter issued by the Government and appeared before the federal grand jury on February 27, 2014.   The undersigned advised Rosenfeld of his rights.   During the advice of

rights, Rosenfeld attempted to stop the undersigned from continuing the advice of rights and stated, in substance, that he understood his Fifth Amendment rights, but indicated that his testimony would not include anything incriminating.   The undersigned finished the advice of rights and proceeded to question Rosenfeld.

During the testimony, Rosenfeld was questioned about his involvement in 2009 in various leased instrument transactions with Vital Funds, Inc.   Rosenfeld stated that he was hired by Mitchell Holland (Vital Funds) to merely perform "back office" paperwork or functions.   Rosenfeld stated that he prepared documents for Vital Funds, reviewed agreements involving Unistate Investments Savings and Loan Limited, and that was the extent of his involvement in the leased instrument transactions.

Rosenfeld and Holland had a relationship that was much more than Rosenfeld described.   The relationship dated back to at least early 2008.   Since 2005, Holland has incorporated at least four different companies in California and Florida:   Trillions Capital (May 24, 2005), Seasoned Funds Company, Inc. (December 28, 2007), Vital Funds, Inc. (February 24, 2009), and most recently Pacific Funding Partners, Inc. (June 11, 2014).[1]   Pacific Funding Partners was incorporated after the unsealing of the Indictment in this case.   Rosenfeld incorporated Aster Capital, Inc. on February 4, 2008.   Rosenfeld previously represented himself as affiliated with Fidelis Holdings and Lincoln Reserve Group.

_____

[1] The listed incorporation dates for the Holland entities are the date of incorporation in Florida.

2

The Indictment specifically lists six different transactions in the overt acts section.   The overt acts section references that these overt acts, *among others*, were perpetrated from June 2009 through February 2010.   There are multiple other fictitious transactions (approximately 13) substantially similar to those charged that involved Holland and Rosenfeld splitting significant sums of money from March 2008 through February 2010.   An itemized list of certain fictitious leased instrument, proof of funds, stand by letter of credit, and verification of deposit transactions, listing the date of initiation of the transaction, the client/investor, the type of transaction, and the amount of money received by Rosenfeld and/or Holland are as follows:

1. March 22, 2008 – Symtech International (Client/Investor) – $649,965 initial deposit for a $100,000,000 "Sub Account" – Aster Capital is the listed "Provider" on the Account Agreement – Aster Capital (Rosenfeld) received $10,000 from the investor to transfer its obligations to Saint Juste International Corporation;

2. May 30, 2008 – Magmetal Industrial, Inc. (Client/Investor) – $475,000 initial deposit for a $10,000,000 "Account" – Aster Capital is the listed "Provider" on the Account Agreement – Aster Capital (Rosenfeld) received $123,050.00 of those funds – Aster Capital wired $40,416.00 to Seasoned Funds (Mitchell Holland) – Rosenfeld submitted a fictitious HSBC "Proof of Funds" bank letter to the escrow agent (Commercial Escrow Services);

3

3. <u>September 30, 2008</u> – <u>Superstition Funding (Client/Investor)</u> – $82,500.00 initial deposit for a $3,000,000 Verification of Deposit – Aster Capital is the listed "Provider" on the Account Agreement – Aster Capital (Rosenfeld) received $70,005.00 of those funds prior to a refund provided to Superstition Funding – Rosenfeld submitted a fictitious JP Morgan Chase document dated October 7, 2008 to the escrow agent (Commercial Escrow Services);

4. <u>June 29, 2009</u> – <u>Deal Structurer (Dwight Jenkins) second deal (Client/Investor)</u> - $600,000 "Arrangement Fee" for a $20,000,000 "Proof of Funds" Account – Vital Funds (Mitchell Holland) is now the "Provider" on the Account Agreement – Aster Capital (Rosenfeld) received $108,850 – Vital Funds (Holland) received $108,850 – Holland provided Dwight Jenkins with two fictitious Citibank Blocked Funds Letters dated July 1 and October 1, 2009 purporting to show the existence of the $20,000,000 Account;

5. <u>September 11, 2009</u> – <u>Bentley Equities, LLC (Client/Investor)</u> - $300,000 "Arrangement Fee" (with $1,600,000 due in 10 business days via Swift MT799) for a $25,000,000 "Account" – Vital Funds (Mitchell Holland) is the "Provider" on the Account Agreement – Aster Capital (Rosenfeld) received $22,500 – Vital Funds (Holland) received $79,400 – Federated Management

4

(Tameka Shell) received $219,000 – Unistate received nothing;

6. September 25, 2009 – Progressive Funding Solutions, LLC (Client/Investor) - $450,000 "Arrangement Fee" (with $4,000,000 due in 60 days) for a $50,000,000 Leased Certificate of Deposit – Vital Funds (Mitchell Holland) is the "Provider" on the Account Agreement – Aster Capital (Rosenfeld) received $119,688 – Vital Funds (Holland) received $154,232;

7.  November 24, 2009 – Promotora Inmobiliaria (Client/Investor) - $5,507,500 "Arrangement Fee" for the leasing of a $100,000,000 Stand By Letter of Credit – Vital Funds (Mitchell Holland) is the "Provider" on the Account Agreement – Aster Capital (Rosenfeld) received $357,288 – Vital Funds (Holland) received $307,289 – Rosenfeld submitted a fictitious BBVA Bancomer bank document purporting to be a $100,000,000 Standby Letter of Credit to the escrow agent (Commercial Escrow Services).

Since at least March 2008, Rosenfeld and Holland have operated as partners.   When viewing the Account Agreements bearing the insignia of Aster Capital and stating that Aster Capital is the "Provider" (Symtech International, Magmetal Industrial, Inc., Superstition Funding) with the Account Agreements bearing the insignia of Vital Funds, Inc. and stating that Vital Funds is the "Provider" (including all transactions specifically listed in the Indictment, the second Deal Structurer, Inc. transaction, Bentley Equities, LLC, Progressive

5

Funding Solutions, LLC, and Promotora Inmobiliaria) for these leased instrument transactions, it is readily apparent that the Account Agreements are the same.

At some point in early 2009, Rosenfeld and Holland made the decision to switch roles.   Vital Funds (Holland) became the "Provider", and Aster Capital (Rosenfeld) began to operate one step removed from the client/investors.   In 2009, client/investors were specifically instructed not to contact Rosenfeld.   Some clients will testify that they do not even know who Rosenfeld is (yet Rosenfeld obtained significant sums of the money paid as the "Arrangement Fee" for the leased instruments).   In every deal, the client/investors received nothing and lost their six figure "Arrangement Fee."

In addition, in every deal, Rosenfeld instructed the escrow agent (usually Commercial Escrow Services – Toni Hardstone) that the "Provider" (whether Holland or Rosenfeld) performed his portion of the leased instrument transaction, and that Ms. Hardstone was permitted to release the six figure escrowed funds. Rosenfeld informed Hardstone via e-mail the specific dollar amounts to send to Holland, Rosenfeld, Unistate Investments Savings and Loan Limited and other entities.   The notice to the escrow company was always one-sided.   The client/investors were never privy to when the escrow funds were released, and who received what portion of the initial Arrangement Fee.

Rosenfeld and Holland split large sums of cash on every transaction. Every transaction failed because the investment opportunity was fictitious. Holland and Rosenfeld facilitated the client/investors obtaining fictitious screen

6

shots, and transmitted fictitious bank documents (Citibank, HSBC, BBVA, and JP Morgan Chase) to the client/investors and the escrow agent.   Yet, Rosenfeld testified before the grand jury (and will likely opt to do so at trial) that he performed "back office" paperwork or functions, and did not know the mechanics of the investment deals.   The evidence establishes otherwise.

Four of the transactions listed above (Deal Structurer, Inc., Bentley Equities, LLC, Progressive Funding Solutions, LLC, and Promotora Inmobiliaria) occurred during the charged timeframe of the Indictment.   The remaining three deals (Symtech International, Magmetal Industrial, Inc., Superstition Funding) occurred in 2008.

On the transactions specifically listed in the Indictment, Warren Rosenfeld received $602,218.   On the transactions specifically listed in the Indictment and those listed above, Rosenfeld received $1,303,178.

On the transactions specifically listed in the Indictment, Mitchell Holland received $507,272.   On the transactions specifically listed in the Indictment and those listed above, Holland received $1,174,959.

On the transactions specifically listed in the Indictment, the client/investors lost in excess of $2,300,500.   On the transactions specifically listed in the Indictment and those listed above, the client/investors lost in excess of $9,633,000.   None of the transactions worked.

**2. Trillions Capital, Seasoned Funds, and Pacific Funding Partners, LLC – Mitchell Holland**

While Warren Rosenfeld used the entity Aster Capital since February 4, 2008 (the date of incorporation in Texas), Mitchell Holland has used at least three separate entities to perform fictitious transactions with Rosenfeld:   Trillions Capital Group, Inc. (incorporated May 24, 2005), Seasoned Funds Company, Inc. (incorporated December 28, 2007), and Vital Funds, Inc. (incorporated February 24, 2009).

After the Indictment was unsealed on May 21, 2014, Holland closed Vital Funds, Inc. and incorporated Pacific Funding Partners, Inc. (incorporated June 11, 2014).   Holland indicated this on the Vital Funds, Inc. website with a photograph of a fish jumping from one fish bowl to another.   All entities marketed the same products, many of which are at issue in this case.

**3. General Equity Building Society – Holland and Rosenfeld**

General Equity Building Society (like Unistate Investments Savings and Loan Limited) is a shell company in New Zealand.   After Unistate was "struck off" (eliminated) from the New Zealand list of registered corporations on February 29, 2012, Holland and Rosenfeld thereafter began marketing their association with General Equity Building Society (later referenced as "General Equity") and General Equity's ability to arrange for the same types of leased instruments and Standby Letters of Credit.   General Equity does not transact legitimate business in New Zealand.   In 2014, the New Zealand Financial Markets Authority issued a

8

public warning for the public to exercise "extreme caution when dealing with General Equity."

## II.    MEMORANDUM OF LAW

### A.  The 2008 and 2009 Transactions Are Inextricably Intertwined

The longtime relationship between Warren Rosenfeld and Mitchell Holland, including their role reversal as investment "Provider" in early 2009, is relevant to their individual intent to commit fraud.   Evidence concerning this relationship in 2008 is inextricably intertwined with the specifically listed leased instrument transactions in the Indictment.

"Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury".   *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985).   Evidence is inextricably intertwined when it tends to corroborate, explain, or provide necessary context for evidence regarding the charged offense.   *United States v. Jiminez*, 224 F.3d 1243, 1249-50 (11th Cir. 2000).

Rosenfeld made statements to the grand jury (admissible at trial pursuant to Federal Rule of Evidence 801(d)(2)(A)) that he was contacted by Holland (operating as Vital Funds), that Holland explained the business venture capital model of placing client/investors with banks and lending institutions offering various leased instruments, and that Holland further stated that Holland was "good

9

at going and finding a bunch of clients," but disliked "doing paperwork."
Rosenfeld further testified that Holland stated, in substance, that Holland would cut
Rosenfeld in on revenue made from the transactions.   Rosenfeld described
himself as "an independent paper pusher."   When asked, what type of paperwork
he was pushing, Rosenfeld responded:

> Well, when he had a client, he would send me - - that he wanted to -
> - that he had agreed to do business with him, and this isn't with all his
> clients, he would send me the information on the client.   He'd have
> them fill out an application and would give all the basic pertinent
> information needed to complete a contract document.   So I would
> do that.   He would get his client to sign that, that would be his
> contract between him and his client.   And then if they move forward,
> Mitch had a source for what he was arranging for his client, and I
> would handle the paperwork for his company to that source.

Rosenfeld continued and made clear that he was referring to "Unistate
Savings" from New Zealand as the supplier of certain financial instruments.
Rosenfeld proceeded to explain that his role in the George Sayar (and other
transactions) was to handle the "paperwork flow" for Holland, and that this included
drafting the Account Agreements on Vital Funds, Inc. letterhead, ensuring that the
information about Holland's client was "properly related to Unistate" (via
Christopher Jaijairam), reviewing Unistate documents, and sending the Unistate
documents to Mitchell Holland to send to his client/investor.   In essence,
Rosenfeld maintained that he merely did "back office" paperwork.   Rosenfeld
admitted receiving $78,172 for his involvement in the George Sayar transaction.

The ensuing investigation revealed this testimony to be false.   The exact
same contracts bearing the Vital Funds insignia were previously used by

10

Rosenfeld in the 2008 Aster Capital Deals (Symtech International, Magmetal Industrial, Inc., and Superstition Funding) wherein Rosenfeld was the "Provider." For the Account Agreements and Escrow Agreement and Joint Escrow Instructions at issue in 2009, all Rosenfeld had to do what change the corporate insignia on the agreement (from Aster Capital to Vital Funds, Inc.), reference the name of Holland's client/investor, and set forth the amount of the leased instrument (usually $100,000,000) and the Arrangement Fees that Holland's client had to pay.   The nature of the transaction in all Account Agreements (whether on Aster Capital letterhead or Vital Funds letterhead) is the same or substantially similar.   All involved the same transaction, whether referenced as a Leased Certificate of Deposit, Bank Guarantee, Proof of Funds Account, or Verification of Deposit.

The progression of the Account Agreement in 2008 into 2009 is an integral part of the charged crimes.   That progression provides relevant evidence as to Rosenfeld's (and Holland's) intent to participate in the alleged fraud scheme.   As set forth, the government can also show the more than two year relationship between Holland (via Trillions Capital Group, Inc., Seasoned Funds Company, Inc., and Vital Funds, Inc.) and Rosenfeld.   Rosenfeld should not be permitted to hide behind his position that he was merely "an independent paper pusher."   The jury should consider this evidence without a limiting instruction.

### B.  Federal Rule of Evidence 404(b)

If the Court finds evidence concerning the relationship of Rosenfeld and

Holland is not "inextricably intertwined" to the allegations set forth in the Indictment, the Court may properly exercise its discretion and admit the evidence to further establish intent, preparation, plan, knowledge, and absence of mistake pursuant to Federal Rule of Evidence 404(b).

Rule 404(b) is a rule of inclusion, and "404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case." *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003) (citation omitted).   This rule permits the introduction of evidence of other crimes, wrongs, or acts to prove a defendant's intent, motive, plan, knowledge, and other specific aspects of an offense. *United States v. Terebecki*, 692 F.2d 1345, 1348 (11th Cir. 1982).   Although the evidence of other acts may not be used to prove criminal propensity, the list of permissible uses provided by the rule "is not exhaustive and the range of relevancy outside the ban [on proving criminal propensity] is almost infinite." *United States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008) (citation omitted).

A three-prong test governs the admissibility of evidence under Rule 404(b). First, the evidence of the other crime, wrong, or act must be relevant to an issue other than the defendant's character. *Ellisor*, 522 F.3d at 1267.   Second, the probative value of the extrinsic evidence must not be substantially outweighed by any undue prejudice.   *Id.*   Third, the government must offer sufficient proof so that the jury can find that the defendant committed the act.   *Id.*

1.   **The Association of Rosenfeld and Holland from 2008 to 2010**

As to the first prong, Eleventh Circuit precedent establishes that a
defendant in a wire fraud conspiracy and wire fraud case who pleads not guilty
makes intent a material issue in the case.   See *United States v. Barrington*, 648
F.3d 1178, 1186 (11th Cir. 2011) (holding that defendant's plea of not guilty in a
grade changing scheme, who was charged with wire fraud, made his intent a
material issue); *see also United States v. Delgado*, 56 F.3d 1357, 1365-66 (11th
Cir. 1995) (a defendant who enters a not guilty plea makes intent a material issue
and imposes upon the government a substantial burden to prove intent, which the
government may prove with qualifying Rule 404(b) evidence absent the defendant
taking steps to remove intent as an issue in the case).   Intent is further put at issue
where the defendant's theory of defense is that of "mere presence" or that he
simply did not participate in any fraud.   *See Barrington*, 648 F.3d at 1186; *see also
United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1225 (11th Cir. 1993) (finding
intent put squarely at issue because of the defendant's "non-participation" defense
in a case involving a cocaine transaction).   When such a defense is raised, the
extrinsic evidence becomes "highly probative."   *See Barrington*, 648 F.3d at 1186
(*citing Delgado*, 56 F.3d at 1366).

Rosenfeld's position that he merely performed paperwork for the 2009 Vital
Funds, Inc. transactions is essentially a "mere presence" and non-participation
defense.   As such, the 2008 Aster Capital transactions are "highly relevant," and

thus the jury should be permitted to consider them.2

As to the second prong, "[a] similarity between the other [prior] act and a charged offense will make the other offense highly probative with regard to a defendant's intent in the charged offense." *United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005).  Where extrinsic act evidence is offered to prove intent, "its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses." *United States v. Dorsey*, 819 F.2d 1055, 1060 (11th Cir. 1987).  The probative value of the extrinsic evidence is not substantially outweighed by unfair prejudice when the extrinsic act events are essentially the same as the charged offense(s) and are explained by events immediately preceding the formation of the charged conspiracy. *Barrington*, 648 F.3d at 1187.

Here, the 2008 Aster Capital transactions and the additional 2009 Vital Funds transactions not specifically discussed in the Indictment are the same.   In each deal, a "Provider" (either Aster Capital or Vital Funds) agrees to secure a high dollar leased instrument investment for a client/investor from a foreign banking entity, the permutation of the transaction (whether it is a leased Certificate of Deposit, Standby Letter of Credit, Proof of Funds Account, Bank Guarantee, or Verification of Deposit) is fictitious, Holland, Rosenfeld, and others split the

---

2 Rosenfeld even states in his April 8, 2015 Motion seeking to exclude the government's expert William Kerr that Rosenfeld merely "administered contracts between Holland and his customers and between Unistate and Holland's customers."   (Doc. 127, p. 2). Rosenfeld continues to maintain this position.   Thus, the tendered evidence is highly probative as to Rosenfeld's state of mind and should be admitted.

"Arrangement Fee," and the client/investor receives nothing and loses a substantial sum of money.   Because of the stark similarity and progression of each deal, the probative value of the evidence is not substantially outweighed by any undue prejudice.

As to the third prong, "[i]n the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor."   *Dowling*, 493 U.S. at 348 (quoting *Huddleston v. United States*, 485 U.S. 681, 689 (1988)); *see also United States v. Cardenas*, 895 F.2d 1338, 1344 (11th Cir. 1990).   As the Supreme Court recognized in *Dowling*, this is a far different standard than the reasonable doubt standard that applies to guilt and innocence in the trial setting.   *Id.* at 348-49.

The government can meet this threshold, that is, the jury can reasonably conclude from admissible evidence that Holland and Rosenfeld worked together from 2008 through 2010 to push the fraudulent leased instrument investments. No one can credibly testify that these transactions were legitimate.   The government will establish via witnesses from the Depository Trust and Clearing Corporation (D.T.C.C.), Committee on Uniform Securities Identification Procedures (CUSIP) Global Services, and representatives from Citi, JP Morgan Chase, and HSBC that the "screen shot" and bank letters used to perform the deals are fictitious.   Toni Hardstone (Commercial Escrow Services) will testify that Rosenfeld was her point of contact for these transactions, and that Rosenfeld told Hardstone how much money to wire and to where.   The evidence is sufficient for

this trial jury to reasonably conclude that the defendants committed the extrinsic acts.   This Honorable Court is well within its discretion to admit the Rule 404(b) evidence.

## 2. General Equity Building Society

The Court may likewise permit the introduction of evidence concerning Mitchell Holland and Warren Rosenfeld marketing investment opportunities relating to General Equity Building Society ("General Equity"), a second New Zealand shell corporation Holland and Rosenfeld marketed as providing legitimate investment opportunities.   This evidence likewise meets the applicable three prong test.   Rosenfeld and Holland have placed intent at issue by their not guilty pleas.   Rosenfeld continues to put forth a mere presence/lack of knowledge defense, and the similarities between Unistate and General Equity are stark. Both conduct no legitimate business in New Zealand.   Both have a series of nominee "directors" from other countries and shareholders sharing a common address.   Both offered the same types of leased instrument investments. Unistate was "struck off"(or eliminated from) the list of registered corporations in New Zealand on February 29, 2012.   Thereafter, Rosenfeld and Holland began marketing General Equity investments.

The government can likewise establish sufficient evidence that Rosenfeld and Holland committed the extrinsic acts.   Both marketed General Equity Building Society to Dwight Jenkins in 2013 (after Jenkins was released from federal prison). Rosenfeld marketed General Equity on the Aster Capital website.   The former

16

head of the New Zealand Financial Intelligence Unit (FIU) (Patrick O'Sullivan) will testify to the hallmarks of fictitious shell companies in New Zealand and that General Equity meets them.   Finally, the New Zealand Financial Markets Authority released a public warning in 2014 that the public should "exercise extreme caution when dealing with General Equity."

### 3.   Pacific Funding Partners, LLC – Mitchell Holland

Holland likewise puts intent at issue.   Holland's claim will be that he is merely a "broker" and simply puts investors together with holders of leased instruments (such as Unistate and General Equity).   The unsealing of the Indictment forced Holland to abandon Vital Funds, Inc. and open Pacific Funding Partners, LLC.   The Pacific Funding Partners website markets the same investments, uses the same addresses, and has the same telephone numbers. In essence, Pacific Funding Partners, LLC is Vital Funds, Inc.   The only difference is the name and the website domain.   The government should be entitled to admit website captures from Pacific Funding Partners, LLC, and cross examine Holland concerning the nature of that entity and the types of investment opportunities it offers.

### 4.   Rondell Scott Hedrick

If Hedrick testifies, the government is permitted, pursuant to Federal Rule of Evidence 609, to impeach Hedrick with his recent fraud conviction.   The Court is permitted under the inclusive nature of Rule 404(b) to permit the government to go beyond the strictures of Rule 609 and cross examine Hedrick concerning the facts

of the fictitious gold investment.   Hedrick likewise puts intent at issue.   Hedrick's position will be that he believed these transactions were legitimate, the same claim Hedrick made in the gold investment trial.   Because the government meets the three pronged Rule 404(b) test, and Hedrick will further put intent at issue if he testifies and proclaims he did not know these transactions were not legitimate, the government should be entitled to such cross examination.

Neither Rosenfeld nor Holland is entitled to a severance.   The motions deadline has long passed.   No defendant requested a severance in a formal motion to the Court.   The government filed the initial Rule 404(b) notice (Doc. 68) on October 31, 2014.   Rosenfeld did not mention a severance or the seating of a separate jury until Rosenfeld filed the objection to the United States' Rule 404(b) Notice, which was filed on April 2, 2015.   Rosenfeld cites an inapposite case in his motion.   Rosenfeld cannot establish under the liberal joinder rules pursuant to Federal Rule of Criminal Procedure 8(a) and 8(b) that he is entitled to a severance merely because Hedrick might testify and be subject to cross examination concerning his prior federal conviction for fraud.   In fact, many of the witnesses in this case have prior convictions.   The government's first witness (Dwight Jenkins) has two prior federal fraud convictions.   Holland and Rosenfeld split large sums of money in two different deals with Jenkins.   Further, if Rosenfeld's position was correct under the law, then this Court would never be permitted to try two defendants together when one had a prior felony conviction and the other did not.

Respectfully submitted,


A. LEE BENTLEY, III
United States Attorney


By:     s/ A. Tysen Duva
        A. Tysen Duva
        Assistant United States Attorney
        Florida Bar No. 0603511
        300 North Hogan Street, Suite 700
        Jacksonville, Florida   32202-4270
        Telephone:   (904) 301-6300
        Facsimile:        (904) 301-6310
        E-mail:        tysen.duva@usdoj.gov


## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Paul Shorstein, Esquire (Counsel for defendant Mitchell Holland)

Mitch Stone, Esquire (Counsel for defendant Warren Rosenfeld)

Maurice C. Grant, II (Counsel for Rondell Scott Hedrick)


                s/ A. Tysen Duva
                A. Tysen Duva
                Assistant United States Attorney

19